In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1601

ROBERT FARNIK, *et al.*,

*Plaintiffs-Appellants*,

*v.*

FEDERAL DEPOSIT INSURANCE CORPORATION,

*Defendant-Appellee*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 3087—**William T. Hart,** *Judge*.

ARGUED APRIL 11, 2012—DECIDED FEBRUARY 5, 2013

Before WOOD, WILLIAMS, and TINDER, *Circuit Judges*.

WILLIAMS, *Circuit Judge*. A group of borrowers sued their lender, Interstate Bank, in state court and alleged that the bank deceived them by failing to base their interest rates on an index rate as promised. After the state shut the lender down, the bank's successor, MB Financial Bank, sought to be replaced as defendant by the lender's receiver, the Federal Deposit Insurance Corporation. After the state court granted the substitu-

tion request, the FDIC removed the case to federal court and moved to dismiss the complaint due to the borrowers' failure to state a plausible claim for relief. The district court granted that motion.

The FDIC asserts for the first time on appeal that no court has jurisdiction over this matter due to the borrowers' failure to exhaust their administrative remedies under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. In response, the Appellants argue that the exhaustion requirement does not apply because they always intended to sue their lender's successor rather than the FDIC or, in the alternative, because MB Financial assumed its predecessor's liabilities. Despite the Appellants' contentions, their claims relate to the lender's alleged acts and omissions, not the successor's, and there is no evidence to support their assumption of liability argument. Because the Appellants failed to exhaust their administrative remedies, we direct the district court to dismiss their case for lack of jurisdiction.

## I. BACKGROUND

Between 2005 and 2007, Appellants Robert Farnik and 2412 W. North Avenue Corporation ("North Inc."), along with other parties who have since dropped out of this litigation, obtained or guaranteed secured loans from Interstate Bank, also known as InBank. Their promissory notes established that InBank would calculate the annual interest rates on their loans by adding a predetermined amount—usually one percentage point—to a variable index rate known as the "Interstate Bank Base Lending

Rate" ("InBank index rate"). The promissory notes also provided that InBank could set this index rate at "its sole discretion" and change it up to once per day. The bank, however, advised the borrowers that it would set the rate "at or around the U.S. prime rate." When the borrowers compared loan statements from 2008, they concluded that the InBank index rate was neither consistent across customers on any given day—as they believed it would be based on their promissory notes—nor set close to the U.S. prime rate.

In August 2009, three borrowers sued InBank in the Circuit Court of Cook County, alleging that the InBank index rate "was an illusory contrivance, which did not in fact exist and varied between bank customers." According to the Plaintiffs, InBank breached its loan agreements with them and violated various state laws by pretending to apply a standard index rate. The month after the Plaintiffs filed their lawsuit, the Illinois Department of Financial and Professional Regulation took possession and control of InBank and appointed the Federal Deposit Insurance Corporation as its receiver. That month, MB Financial Bank, N.A., purchased certain InBank accounts, including the ones involved in this litigation. In October 2009, before InBank, MB Financial, or the FDIC made an appearance, the circuit court granted the Plaintiffs leave to amend their complaint. While the Plaintiffs sought numerous extensions of their amendment deadline, MB Financial filed its appearance in the case as successor in interest to InBank.

In March 2010, the Plaintiffs filed an amended class action complaint against MB Financial, as successor in

interest to InBank, over the allegedly illusory index rate. The complaint states causes of action for violations of the Illinois Interest Act, 815 ILCS 205/1 et seq., and the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1 et seq., as well as for contract reformation and fraud. MB Financial then responded with a motion to substitute the FDIC as defendant because the FDIC had agreed to indemnify it for any of InBank's liabilities that it had not assumed, and MB Financial had not assumed liabilities for "claims based on any action or inaction prior to the Bank Closing of the Failed Bank" or "claims based on any malfeasance, misfeasance or nonfeasance of the Failed Bank." MB Financial attached to its motion a letter from the FDIC's regional counsel to MB Financial confirming indemnification in this matter. Farnik and North Inc. contend that they objected to the motion to substitute, though there are no details about that objection in the record. The state court granted the motion, and the FDIC removed the case to federal court in May 2010. *See* 12 U.S.C. § 1819(b)(2)(A) (any civil suit in which the FDIC is a party "shall be deemed to arise under the laws of the United States"). The FDIC then filed a motion to dismiss, which the district court granted with prejudice as to the individual plaintiffs after finding that the complaint failed to state any plausible claim for relief.

More than eight months after the FDIC's substitution as defendant, more than seven months after removal to federal court, and nearly six months after the FDIC filed its motion to dismiss (and perhaps coincidentally, on the day the district court granted the motion to

dismiss, although it is unclear from the record which came first), the Plaintiffs filed a motion to further amend their complaint. In it, they asked to substitute MB Financial as defendant, which would enable them to seek to enjoin MB Financial from proceeding with pending foreclosure actions in state court. They also argued that their amended class action complaint stated no claims against the FDIC. The district court denied the motion as moot but allowed the Plaintiffs to resubmit it once they filed a motion for reconsideration of the order granting the motion to dismiss. The court eventually denied the resubmitted motion to amend, finding that amendment would be futile because the proposed second amended complaint stated no claims against the FDIC, and substituting MB Financial as defendant would strip the court of jurisdiction. The court also determined that the claims included in the proposed second amended complaint either failed to state a plausible claim for relief or were based on InBank's pre-receivership conduct rather than MB Financial's independent actions.

The borrowers filed a timely appeal of the district court's decisions granting the motion to dismiss and denying the motion to amend. The FDIC argued for the first time on appeal that the courts lack subject matter jurisdiction because the Plaintiffs failed to exhaust their administrative remedies.

## II. ANALYSIS

Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), Pub. L. 101-73, 103

Stat. 183 (1989), the FDIC has statutory authority to administer claims against a depository institution for which the FDIC is receiver. *See* 12 U.S.C. § 1821(d)(3)-(d)(13). Courts lack jurisdiction to hear such claims unless plaintiffs first present them to the FDIC. *Id.* § 1821(d)(13)(D)(ii) (limiting judicial review of claims "relating to any act or omission [of a failed bank or the FDIC] as receiver"); *id.* § 1821(d)(6)(A) (allowing judicial review of claims that have exhausted the administrative claim procedure).[1]

The party asserting federal jurisdiction bears the burden of demonstrating its existence. *Hart v. FedEx Ground Package Sys., Inc.*, 457 F.3d 675, 679 (7th Cir. 2006).

---

[1] This court recently noted that failure to comply with FIRREA's claims processing rules (e.g., filing deadlines) does not necessarily raise a jurisdictional issue. *Campbell v. FDIC*, 676 F.3d 615, 618 (7th Cir. 2012) ("[I]t is our belief that in light of the Supreme Court's more recent decisions, the proper characterization of FIRREA's rules for claims submission [is] as claims processing rules." (internal citations omitted)). Unlike the plaintiff in *Campbell*, however, Farnik and North Inc. do not allege that they are entitled to an extension of the claim filing deadline or a favorable outcome from another discretionary decision in the claims process. Rather, they completely bypassed the administrative process that grants judicial review of FIRREA claims, which presents a jurisdictional issue. *See Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1202 (2011) ("We have urged that a rule should not be referred to as jurisdictional unless it governs a court's adjudicatory capacity . . . ."); 12 U.S.C. § 1821(d)(13)(D) ("No court shall have jurisdiction . . . .").

Ordinarily, in a case such as this, that burden falls to the party who removed the case to federal court. Although the FDIC removed this matter, neither it nor the Appellants now believes the federal courts have subject matter jurisdiction. The FDIC argues that no court may hear Farnik and North Inc.'s claims due to their failure to comply with FIRREA's judicial review requirements. The Appellants, who are an Illinois resident and an Illinois corporation, argue that because MB Financial, an Illinois bank, is the proper defendant and none of the claims arise under federal law, there is no basis for federal jurisdiction and the case belongs in state court. To reach the Appellants' desired outcome—remand to state court—we would need to first find that jurisdiction was proper upon removal. *See In re Burlington N. Santa Fe. Ry. Co.*, 606 F.3d 379, 380 (7th Cir. 2010) ("The well-established general rule is that jurisdiction is determined at the time of removal, and nothing filed after removal affects jurisdiction."). We would then need to find that the district court erred when it denied Farnik and North Inc.'s motion for leave to amend the amended class action complaint, which was essentially a motion to remand. *See Schillinger v. Union Pacific R.R. Co.*, 425 F.3d 330, 333 (7th Cir. 2005) ("[A]n amendment that is made for legitimate purposes may be a proper ground for a remand to state court."). Thus, it is the Appellants who are asserting federal jurisdiction—albeit temporarily—and who bear the burden of proving its existence here.

We review the legal question of subject matter jurisdiction and "a district court's decisions regarding the

propriety of removal" de novo. *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 891 (7th Cir. 2007). To determine whether jurisdiction exists, we look beyond the jurisdictional allegations of the complaint and consider any evidence submitted on the issue. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

Farnik and North Inc. acknowledge that they did not first present their claims to the FDIC. They argue, however, that they were not required to do so because their claims are actually against MB Financial, rather than either InBank or the FDIC.[2] This argument takes two

---

[2] The Appellants have not asserted that they were exempt from the administrative claims process because they filed the initial complaint before InBank failed, although the FDIC argued that FIRREA's administrative exhaustion requirement applies to pre-receivership claims in its brief. While there is no Seventh Circuit precedent on this issue, other circuits have interpreted FIRREA as allowing courts to maintain jurisdiction over pre-receivership claims *and* as requiring such claims to go through the administrative claims process through a provision mandating that courts grant requests for stays made by the receiver. *See* 12 U.S.C. § 1821(d)(12) (requiring courts to grant a 90-day stay "in any judicial action or proceeding to which such institution is *or becomes* a party" (emphasis added)); *Marquis v. FDIC*, 965 F.2d 1148, 1154 (1st Cir. 1992) (interpreting FIRREA as "permit[ting] federal courts to retain subject matter jurisdiction in circumstances where a bank's failure (and the FDIC's appointment as receiver) postdates the institution of a suit against the bank"); *see also*

(continued...)

forms: first, that their claims relate to MB Financial's independent conduct and second, that MB Financial assumed liability for these claims against InBank. Neither of these arguments has merit.

## A. The Appellants' Claims Are Based on InBank's Pre-Receivership Conduct

The Appellants argue that MB Financial is the proper defendant because it was named as the sole defendant in their class action complaint, the FDIC moved to substitute itself as defendant,[3] and the Appellants have never conceded that the FDIC was the proper party. Yet none of these facts—which each prioritize form (i.e., the defendant named on the complaint) over function (i.e., the independent actions of the alleged wrongdoer)—is determinative of whether the claims in the complaint are against MB Financial for InBank's acts or omissions.

---

(...continued)

*Glover v. FDIC*, 698 F.3d 139, 151 (3d Cir. 2012) (holding, in the alternative, that "when a bank fails *after* a claim is filed in federal court, the jurisdictional bar does not apply" to require dismissal of the claim, but FIRREA instead allows for a stay to permit the administrative process to take place); *Brady Dev. Co. v. Resolution Trust Corp.*, 14 F.3d 998, 1006 (4th Cir. 1993) ("Pending actions are to be stayed until the outcome of the administrative process."). Since the Appellants have not made this argument, however, we need not resolve the issue.

[3] It appears from the record that MB Financial moved to substitute the FDIC as defendant.

Courts lack authority to review FIRREA claims "relating to any act or omission" of a failed bank or of the FDIC as receiver of a failed bank unless they are first subjected to FIRREA's administrative claims process. 12 U.S.C. § 1821(d)(13)(D)(ii). Although this circuit has not had an opportunity to consider how this judicial review provision applies to third-party successor banks, other circuits that have done so have interpreted it as focusing on the substance of a claim rather than its form. For example, in *American National Insurance Co. v. FDIC*, the D.C. Circuit found that claims that a third-party bank pressured the FDIC to acquire Washington Mutual, a failed bank, were actually claims against the third party, not the FDIC as receiver or the failed bank, and as such were not subject to FIRREA's administrative process. 642 F.3d 1137, 1144 (D.C. Cir. 2011). That court held that "[w]here a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver," it falls under FIRREA. *Id.* In *Benson v. JPMorgan Chase Bank, N.A.*, the Ninth Circuit held that "[l]itigants cannot avoid FIRREA's administrative requirements through strategic pleading," so "a claim asserted against a purchasing bank based on the conduct of a failed bank must be exhausted under FIRREA." 673 F.3d 1207, 1209 (9th Cir. 2012). In *Benson*, a group of investors claimed that a failed bank, again Washington Mutual, aided and abetted a Ponzi scheme that defrauded them. They alleged that JPMorgan Chase, Washington Mutual's successor in interest, was liable for Washington Mutual's conduct because it assumed Washington Mutual's liabilities from the FDIC and be-

cause it continued Washington Mutual's wrongdoing. The Ninth Circuit, however, determined that the plaintiffs had not adequately pled a claim based on JPMorgan's own conduct and found the claims jurisdictionally barred due to the plaintiffs' failure to exhaust their administrative remedies. Other circuits have adopted similar analyses. *E.g., Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n.3 (11th Cir. 1999). Recognizing that strategic case captioning would allow creditors to completely bypass FIRREA's administrative process, we join our sister circuits and hold that the FIRREA administrative exhaustion requirement is based not on the entity named as defendant but on the actor responsible for the alleged wrongdoing.

Turning then to Farnik and North Inc.'s claims, we find that they clearly relate to InBank's acts and omissions and are subject to FIRREA's administrative claims process. The amended class action complaint, which names MB Financial as defendant in its capacity as successor in interest to InBank, makes no effort to differentiate the actions of the two banks. The factual allegations address InBank's conduct: unilaterally preparing the loan agreements, setting the values of the InBank index rate, representing the interest charges as a standard variable rate, concealing the true nature of the interest rates, providing loan closing services, and computing and charging interest based on an illusory index rate. So, too, are the legal allegations: violating the Illinois Interest Act by charging and collecting interest based on an illusory rate and providing false

loan statements, deceiving borrowers about the nature of the index rate in violation of the Illinois Consumer Fraud and Deceptive Practices Act, rendering a contract unenforceable by unilaterally inserting a "vague and confusing boilerplate provision" to circumvent state interest rate laws, and committing fraud by failing to disclose interest rates and the methods of calculating costs and interest.

Farnik and North Inc.'s belated attempt to amend their complaint also falls short. Their primary reason for requesting leave is to add MB Financial as a defendant to seek to enjoin it from proceeding with foreclosure actions.[4] Yet nothing in the proposed second amended complaint identifies how MB Financial's foreclosure pursuits result from its own wrongdoing. Rather, the Appellants state that foreclosure is "an attempt to collect upon the illegally imposed interest and other fees," clearly relating back to InBank's conduct.

Regardless of whether the Appellants name InBank, the FDIC, or MB Financial as defendant, their claims are only exempt from FIRREA's jurisdictional bar if they identify MB Financial's independent wrongdoing as the basis for relief. Since they fail to do so, we find that the FDIC, as InBank's receiver, is the proper defendant in this matter and that the Appellants' claims are subject to the administrative exhaustion requirement.

---

[4] Farnik and North Inc. also seek to add a cause of action for breach of contract. That proposed claim, however, specifically states that "*InBank* failed to follow the [l]oan [c]ontracts" (emphasis added).

## B.  There Is No Evidence That the FDIC Transferred Liability for These Claims to MB Financial

The Appellants argue in the alternative that they were not required to exhaust their administrative remedies because MB Financial assumed liability for these claims. This argument also lacks merit.

When the FDIC steps in as receiver of a failed bank, it takes over the bank's assets and operations, collects all monies and obligations due the failed bank, preserves and conserves its assets, and performs all functions of the institution consistent with receivership. 12 U.S.C. § 1821(d)(2)(B). The FDIC has two primary options as receiver of a failed bank: liquidate the bank's assets or enter into a purchase and assumption transaction with another bank. *E.g.*, *FDIC v. Bierman*, 2 F.3d 1424, 1438 (7th Cir. 1993); *FDIC v. Wright*, 942 F.2d 1089, 1090 n.1 (7th Cir. 1991). In the latter, the FDIC sells the failed bank's assets to a healthy bank, which agrees to pay the failed bank's depositors. *Wright*, 942 F.2d at 1090 n.1. The FDIC then pays the successor bank the difference between the value of the assets and what it owes depositors. *Id.*

A purchase and assumption agreement may also address which of the failed bank's liabilities the healthy bank will assume. But "[a]bsent an express transfer of liability by [the receiver] and an express assumption of liability by [the successor], FIRREA directs that [the receiver] is the proper successor to the liability . . . ." *Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111-12 (7th Cir. 1991). This allows the receiver to "absorb

liabilities itself and guarantee potential purchasers that the assets they buy are not encumbered by additional financial obligations." *Id.*

In this matter, the only evidence in the record regarding the assumption of InBank's liabilities is the March 2010 letter from the FDIC to MB Financial in which the FDIC agreed that "MB Financial did not assume liability for claims of this type" and that MB Financial had "complied with all conditions precedent for indemnification." In that letter, which MB Financial attached to the motion to substitute and included with the notice of removal, the FDIC agreed to indemnify MB Financial, to substitute in the matter as the correct party in interest, and to assume the defense. On appeal, Farnik and North Inc. challenge the FDIC's reliance on this document, arguing that whether the FDIC indemnified MB Financial is not the same as whether it assumed responsibility for InBank's liabilities. The Appellants also contend that the actual assumption agreement is not in the record and that they should have an opportunity to pursue their theory that the FDIC sold InBank's liabilities to MB Financial.

While the Appellants are correct that the assumption agreement is not in the record, they have done nothing to counter the evidence that is there. The March 2010 letter clearly communicates the FDIC's understanding that "MB Financial did not assume liability for claims of this type." The reasonable interpretation of this letter is that the two parties to the purchase and assumption agreement—the FDIC and MB Financial—agree that

liability for these claims did not pass to MB Financial but remained with the FDIC, which would substitute in the matter as "the correct party in interest." Because this is a jurisdictional issue, we can look to evidence beyond the pleadings to determine whether the FDIC is the proper defendant. *See Alicea-Hernandez*, 320 F.3d at 701. The Appellants, however, have offered nothing more than speculation and their conclusory interpretation of an agreement to which they were not parties and of which they have not contended they were beneficiaries.[5] *See McLean Cnty. Bank v. Brokaw*, 519 N.E.2d 453, 456 (Ill. 1988) ("The function of the court is to effectuate, if ascertainable, the intent of the parties to the contract."). In the absence of any evidence that the FDIC intended to transfer—and MB Financial intended to assume— liability for these claims, we credit the March 2010 letter and conclude that liability for these claims remains with the FDIC as InBank's receiver. *See, e.g., Payne*, 924 F.2d at 111-12. And since the Appellants did not administratively exhaust those claims, the federal courts lack subject matter jurisdiction.

---

[5] Even prior to this appeal, Farnik and North Inc. had numerous opportunities to present evidence regarding the FDIC's assumption—or alleged lack thereof—of InBank's liabilities: in response to the motion to substitute, after removal to federal court, and following the motion to dismiss. And, of course, they could have explored this in the administrative process, had they availed themselves of it.

## III. CONCLUSION

For the reasons set forth above, we VACATE the district court's order granting the motion to dismiss and REMAND this case with instructions to dismiss for lack of subject matter jurisdiction.